FILED
2006 May-05  AM 10:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| DOLLAR GENERAL CORPORATION ) | MDL 1635 |
| FAIR LABOR STANDARDS ) | |
| LITIGATION ) | |
| | |
| EDITH BROWN, SHERYL ADCOCK, ) | |
| VICKY BAILEY, REGINA BRUNO, ) | |
| CLARA BURGESS, CHRISTY HALL, ) | |
| GERRY HELLER, CHRISTOPHER ) | |
| HUDSON, ANNETTA McMULLIN, ) | |
| VALERIE SHAW, PEGGY TAYLOR, ) | |
| and FRANK ZALMAN, on behalf of ) | |
| themselves and others similarly situated, ) | |
| ) | |
| Plaintiffs, ) | Civil Action Number |
| ) | **7:02-cv-0673-UWC** |
| vs. ) | |
| ) | |
| DOLGENCORP, INC.; DOLGENCORP ) | |
| OF NEW YORK; DOLGENCORP OF ) | |
| TEXAS; and DOLLAR GENERAL ) | |
| PARTNERS, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION ON MOTION TO DECERTIFY**

The Court has previously certified this case as a collective action under the

Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* (Doc. 135.) Following discovery, Defendants Dolgencorp, Incorporated, Dolgencorp of New York, Dolgencorp of Texas and Dollar General Partners (hereinafter collectively referred to as "Dollar General") moved the Court to decertify this action, claiming that the named Plaintiffs and the opt-in Plaintiffs are not similarly situated.[1] (Doc. 450) For the reasons which follow, the motion is due to be overruled.

I

To determine whether the Plaintiffs are similarly situated,[2] the Court has considered three factors: 1) the disparate factual and employment setting of the individual plaintiffs; 2) the various defenses available to the defendants which appear to be individual to each plaintiff; and 3) fairness and procedural considerations. *Brooks v. BellSouth Telecommunications, Inc.*, 164 F.R.D. 561, 568 (N.D. Ala. 1995).[3] Applying these factors, the Court has determined that de-certification is not justified in the present case.

---

[1] Unless otherwise necessary, the Court will use the term "Plaintiffs" to refer to both the named Plaintiffs and the opt-in Plaintiffs collectively.

[2] To be "similarly situated" does not mean identically situated. *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996).

[3] It appears that the Eleventh Circuit has yet to provide a definitive test for determining when Plaintiffs are similarly situated under FLSA.

First, all of the Plaintiffs work in substantially similar employment settings under substantially similar conditions. Thus, there is no disparity with respect to the factual and employment setting of the Plaintiffs. Second, the defenses asserted by Dollar General apply to all of the Plaintiffs. Thus, the various defenses available to Dollar General are not specific to individual Plaintiffs. Finally, the similarity of the evidence relating to Plaintiffs is such that a decision on the merits of the named Plaintiffs' claims can be applied equally and fairly to all Plaintiffs.

## II

Dollar General maintains that Plaintiffs are not similarly situated with respect to the non-exempt duties they perform or the amount of time spent engaged in such duties. Performance of non-exempt duties, alone, is not determinative of liability under the FLSA "executive exemption." 29 U.S.C. § 213(a)(1). Rather, under the FLSA "short test" the executive exemption applies if the following three components are met: 1) the employee must be compensated on a salary basis of not less than $250 per week; 2) the employee's "primary duty" must be the management of the enterprise, or management of a customarily recognized department/division of the enterprise; and 3) the employee must customarily and regularly direct the work of two or more other employees. 29

C.F.R. § 541.1 (2003).[4]  For executive positions after August 22, 2004, the weekly salary must be at least $455.  Additionally, under the new provisions: (1) the employee must be empowered to hire or fire others;  or (2) the employee's recommendations on hiring, firing, advancement, promotion or any other change of status must be given particular weight.  29 C.F.R. § 541.100 (2004).

Plaintiffs concede that they were paid at least $250 weekly prior to August 23, 2004, and those who worked as store managers thereafter were paid not less than $455 per week.  (*See* Pls' Briefs, Doc. 493 at pp. 11-12; Doc. 513.)

On the issue of supervising two or more employees and the issue of whether Plaintiffs' "primary duty" is managerial, Plaintiffs do not concede that the exemption test is met.  First, Plaintiffs presented evidence that they were customarily ordered to work at other stores preparing for inventories or unloading freight.  In those instances, Plaintiffs almost exclusively perform manual labor, rather than management duties.  Thus, Plaintiffs are similarly situated because they do not customarily and regularly direct the work of two or more employees.

Plaintiffs also present evidence that they are similarly situated on the issue of whether management is their "primary duty."  A determination of whether an employee has management as his/her "primary duty" is based on the totality of

---

[4] This provision was amended August 23, 2004.

circumstances. 29 C.F.R. § 541.103 9 (2003). Five factors are typically utilized in making the "primary duty" assessment. These include:

1) the time spent in the performance of managerial duties;

2) the relative importance of managerial and non-managerial duties;

3) the frequency with which the employee exercises discretionary powers;

4) the employee's relative freedom from supervision; and

5) the relationship between the employee's salary and the wages paid employees doing similar non-exempt work.

29 C.F.R. § 541.103.

### A. Time Spent in the Performance of Managerial Duties

Plaintiffs are similarly situated in the time spent performing their non-managerial duties. Virtually all of them spend less than a fourth of their time performing such duties.

### B. Relative Importance of Managerial and Non-Managerial Duties

The most important work performed by the store managers involves the physical movement of freight from the Dollar General trucks to the floor of the retail store. While the volume of freight handled by the stores has increased over the years, in some instances the number of store employees has remained the same

and/or the number of labor hours did not significantly increase. Therefore, in order to unload the freight within the specified time limits, the managers had to spend more and more of their time moving freight.

To be sure, the store managers perform various managerial duties; but the asserted indispensability of the store managers' managerial duties is belied by the fact that fairly often, for weeks at a time, the store manager is assigned by the district manager to work at other stores in non-exempt positions (most often, the unloading and stocking of merchandise). Roughly ninety percent (90%) of the named Plaintiffs and opt-ins have been reassigned to other stores in order to perform non-exempt duties. During such times, and at other times, the managerial duties at the store from which a manager is temporarily furloughed are performed by either the district manager or the non-exempt assistant manager. Thus, the evidence indicates that Plaintiffs are similarly situated with respect to the level of importance Dollar General places on managerial versus non-managerial tasks.

### C. Frequency With Which the Store Managers Exercise Discretionary Powers

All Dollar General stores are laid out and operated in essentially the same manner. A set of Standard Operating Procedures ("SOPs") govern the operation of each store and the district managers are trained to operate the stores in their

districts in the same way. Merchandise in the stores is displayed strictly according to Dollar General's "plan-o-gram." Store managers have no authority to deviate from the "plan-o-gram."

Store managers are forbidden to enter the stores which they "manage" outside their regular hours without first informing their district managers.

Plaintiffs are similarly situated in that they cannot hire assistant managers and other employees who are given keys to the store. This discretionary power is reserved for the district managers. Store managers lack the authority to discharge an employee without the approval of the district manager.

Store managers cannot close the stores in the event of an emergency or natural disaster without first consulting with the district manager. They cannot discount items for sales purposes and they are not free to advertise in the print or broadcast media.

Store managers do not make the decision on whether to prosecute shoplifters.

In all these respects, Plaintiffs are similarly situated because they are frequently prevented from exercising discretionary authority.

### D. Relative Freedom From Supervision

The work of the store managers is extensively supervised by the district managers.

Through daily voice-mails, the district managers assign various tasks to the store managers and otherwise direct the work of the individual stores.

District managers sometimes require store managers to work certain days; and sometimes cancel a store manager's scheduled off-days.

Store managers cannot hire assistant store managers and lead clerks for their stores without the approval of their district managers.  In stores with high shrinkage rates, the store manager cannot hire any employees.

Store managers cannot close their stores in the event of an emergency or natural disaster, without first consulting with their district managers.

Store managers cannot contract with electricians, plumbers, or heating/air service companies without the prior approval of their district managers.  Contract laborers must be approved by the district manager before being hired by a store manager.  Before a store manager can have the store's floors strip waxed and sealed, or spray buffed, the district manager's approval is required.

The store manager is not authorized to have contact with the media concerning the store; rather, managers must direct the media to corporate headquarters for response.

The district managers are ultimately responsible for the sales, shrink, and operation of the stores in their respective districts; and they have the final word on all decisions in the stores located in their districts.  Accordingly, Plaintiffs are similarly situated in that they have relatively little freedom from supervision.

### E. Relationship Between  Store Managers' Salaries and Wages Paid Employees Doing Similar Non-Exempt Work

The minimum weekly salary of a Dollar General store manager was at least $250 weekly prior to August 23, 2004, and at least $455 per week thereafter. Based upon current salaries, using a conservative estimate that the Plaintiffs worked at least sixty hours per week, their average hourly rate would be only $7.58.  Of the Plaintiffs and opt-ins who were deposed, their median hourly rate is $8.58.  (Doc. 549.)  According to Dollar General, assistant store managers average $7.73 per hour.

The relationship between the salaries of store managers and the hourly wages paid to assistant store managers strongly suggests that Plaintiffs are non-executives.  Further, the evidence clearly shows that Plaintiffs are similarly situated with respect to these compensation comparisons.

The Court concludes that the Plaintiffs are similarly situated with respect to

Dollar General's claim that the managers are executive employees.  Accordingly, Dollar General's motion for decertification is due to be denied.

Done this 5th day of May, 2006.

_____
U.W. Clemon
Chief United States District Judge